**FOR PUBLICATION**

# In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10290
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ALONSO PINEDA-TORRES,
   a.k.a. Galladita,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:17-cr-00014-RAL-AAS-2

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and BRASHER,
Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether Congress may make a conspiracy to commit drug trafficking in international waters a criminal offense. When Coast Guardsmen interdicted two vessels carrying thousands of kilograms of cocaine in international waters, officials traced the drug smuggling to Alonso Pineda-Torres, a citizen and resident of Colombia. After his extradition to the United States, Pineda-Torres pleaded guilty to conspiracy to commit drug smuggling under the Maritime Drug Law Enforcement Act. *See* 46 U.S.C. § 70506(b). Because Congress has the authority under the Necessary and Proper Clause to punish Pineda-Torres's conduct, we affirm.

## I.  BACKGROUND

In 2015 and 2016, Coast Guardsmen interdicted two stateless self-propelled semi-submersible vessels carrying thousands of kilograms of cocaine in international waters. Both crews were headed from Colombia to Mexico. Colombian citizen Alonso Pineda-Torres was "involved in the planning and preparation of this smuggling venture." In 2017, a federal grand jury indicted Pineda-Torres, under the Maritime Drug Law Enforcement Act, 46 U.S.C. §§ 70501–70508, for conspiring to distribute and possess with intent to distribute five or more kilograms of cocaine on board a vessel subject to the jurisdiction of the United States. *See id*. §§ 70503(a)(1), 70506(b). Federal officials extradited Pineda-Torres from Colombia to the United States.

Pineda-Torres initially pleaded not guilty. He later entered into a written plea agreement in which he admitted that he paid at

least one crewmember on each vessel and was present at one launch site "assisting in its dispatch from Colombia into international waters." But at his change of plea hearing, he moved to dismiss for lack of jurisdiction because his "conduct was not done in the United States" and he "was not captured in international waters." After the district court denied his motion, Pineda-Torres pleaded guilty.

## II.  STANDARD OF REVIEW

We review *de novo* whether a statute of conviction is constitutional. *United States v. Campbell*, 743 F.3d 802, 805 (11th Cir. 2014).

## III. DISCUSSION

Congress passed the Maritime Drug Law Enforcement Act based on its power "[t]o define and punish . . . Felonies committed on the high Seas." U.S. CONST. art. I, § 8, cl. 10; *United States v. Estupinan*, 453 F.3d 1336, 1338–39 (11th Cir. 2006). Section 70503 prohibits "possess[ion] with intent to . . . distribute . . . a controlled substance" "on board a covered vessel," including a "vessel without nationality," in any water. 46 U.S.C. §§ 70502(c)(1)(A), 70503(a)(1), (b), (e)(1). Section 70506(b) separately prohibits "attempting or conspiring to violate section 70503." *Id*. § 70506(b). Both provisions cover drug trafficking in "international waters." *United States v. Davila-Mendoza*, 972 F.3d 1264, 1268 & n.2 (11th Cir. 2020) (citation modified); *Estupinan*, 453 F.3d at 1337–39.

Pineda-Torres argues that the Act is unconstitutional as applied to him because his "criminal acts . . . lacked any nexus to the United States." But our precedent forecloses this argument. We

have held that "conduct proscribed by the Act need not have a nexus to the United States because universal and protective principles support its extraterritorial reach." *Campbell*, 743 F.3d at 810; *see also Estupinan*, 453 F.3d at 1338.

Pineda-Torres also argues that the Act is unconstitutional because his conduct "occurred solely in Colombia." But we again disagree. Even if the Felonies Clause itself does not reach Pineda-Torres's conduct, the Constitution permits legislation that is "necessary and proper for carrying into Execution" Congress's enumerated powers. U.S. CONST. art. I, § 8, cl. 18.

The Supreme Court has explained that the Necessary and Proper Clause gives Congress "broad power to enact laws that are convenient, or useful or conducive to" the "Constitution's grants of specific federal legislative authority." *United States v. Comstock*, 560 U.S. 126, 133–34 (2010) (citation modified). A law is necessary and proper when it uses "means reasonably adapted" to a constitutionally "permitted end." *United States v. Darby*, 312 U.S. 100, 121 (1941). When deciding whether a law is necessary and proper, courts do not sit in judgment of "the degree of [the law's] necessity, the extent to which [the law] conduce[s] to the end, [or] the closeness of the relationship between the means adopted and the end to be attained." *Burroughs v. United States*, 290 U.S. 534, 547–48 (1934).

Section 70506(b) is reasonably adapted to Congress's legitimate end of banning drug trafficking on the high seas. Prohibiting agreements to commit drug smuggling in international waters serves as a useful prophylactic against smuggling. *See Conspiracy*,

BLACK'S LAW DICTIONARY (12th ed. 2024) (defining conspiracy as an "agreement by two or more persons to commit an unlawful act"). As our sister circuit explained, land-based conspirators often "direct, finance, and profit from" drug smuggling operations. *United States v. Alarcon Sanchez*, 972 F.3d 156, 167–68 (2d Cir. 2020) (sustaining convictions of foreign "on-land conspirators" under the Necessary and Proper Clause). Section 70506(b) targets smuggling on the high seas at its source. *Cf. Sabri v. United State*s, 541 U.S. 600, 605 (2004) (upholding as necessary and proper the criminal ban on bribing officials working for federally funded entities because the ban "address[ed] the problem [of misuse of funds] at [its] source[] . . . , by rational means").

The First Congress too punished land-based conspiracies to engage in unlawful activity on the high seas. *See CFPB v. Cmty. Fin. Servs. Ass'n of Am.*, 144 S. Ct. 1474, 1484 (2024) (stating that laws enacted by the First Congress serve as "contemporaneous and weighty evidence of the Constitution's meaning" (citation modified)). Section 10 of the Crimes Act of 1790 prohibited aiding "any person . . . to do or commit any murder or robbery, or other piracy . . . upon the seas" regardless of whether the aid occurred "upon the land or the sea." An Act for the Punishment of certain Crimes against the United States, § 10, 1 Stat. 112, 114 (1790). Congress enacted both section 10 in 1790 and the later section 70506(b) "in aid" of laws punishing felonies on the high seas. *Cf. Comstock*, 560 U.S. at 147.

*United States v. Davila-Mendoza* does not require a different conclusion. There, we reiterated that Congress lacked authority under the Felonies Clause to punish "crimes . . . not committed on the high seas." 972 F.3d at 1267–68 (citing *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1258 (11th Cir. 2012)). That is, the Clause did not support the drug trafficking convictions of "foreign nationals aboard a foreign vessel in the territorial waters of a foreign nation, not the high seas." *Id.* at 1268 n.2; *see also id.* at 1268–69 (not considering whether the Necessary and Proper Clause in connection with the Felonies Clause would sustain the convictions). Here, by contrast, Coast Guardsmen seized contraband and Pineda-Torres's conspirators in international waters, so the Felonies Clause covers their crimes. *See Estupinan*, 453 F.3d at 1337–39. And the Necessary and Proper Clause permits Congress to punish Pineda-Torres for agreeing to facilitate their crimes.

## IV. CONCLUSION

We **AFFIRM** Pineda-Torres's conviction.